# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONNOR KELLEY, | : | **CIVIL ACTION NO.:** |
| | : | |
| *Plaintiff,* | : | 20     8421 |
| | : | |
| v. | : | |
| | : | |
| STARBUCKS CORPORATION d/b/a | : | |
| STARBUCKS COFFEE COMPANY, | : | |
| | : | **JURY TRIAL DEMANDED** |
| *Defendant.* | : | |

**FILED**

FEB 1 3 2020

KATE BARKMAN, Clerk
By_____Dep. Clerk

## COMPLAINT AND JURY DEMAND

## I.   PRELIMINARY STATEMENT:

1.      This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, Connor Kelley ("Plaintiff"), a former employee of Defendant, Starbucks Corporation d/b/a Starbucks Coffee Company ("Defendant"), who has been harmed by the Defendant's discriminatory employment practices.

2.      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et seq., as amended by the Civil Rights Act of 1991, at 42 U.S.C. §1981(a) ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. §951 et seq. ("PHRA").

## II.   JURISDICTION AND VENUE:

3.      The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §§1331 and 1391 as Plaintiff's claims are substantively based on Title VII and the ADA.

1

4.     The supplemental jurisdiction of this Court is invoked pursuant to 28
U.S.C. §1367 to consider Plaintiff Maldonado-Torres' claims arising under the PHRA.

5.     All conditions precedent to the institution of this suit have been fulfilled
and Plaintiff has satisfied all jurisdictional prerequisites to the maintenance of this action.
On November 18, 2019, a Notice of Right to Sue was issued by the Equal Employment
Opportunity Commission and this action has been filed within ninety (90) days of receipt
of said notice.

### III.   PARTIES:

6.     Plaintiff, Connor Kelley ("Plaintiff Kelley"), is a male and citizen of the
Commonwealth of Pennsylvania, residing therein at 1071 Tyson Avenue, Abington,
Pennsylvania 19001.

7.     Defendant, Starbucks Corporation d/b/a Starbucks Coffee Company
("Defendant"), is a corporation duly organized and existing under the laws of the State of
Washington, maintaining a place of business at 1103 Bethlehem Pike, Spring House,
Pennsylvania 19477.

8.     At all times relevant hereto, the Defendant was acting through its agents,
servants, and employees, who were acting within the scope of their authority, course of
their employment, and under the direct control of the Defendant.

9.     At all times material herein, the Defendant is and has been a "person" and
"employer" as defined under the ADA, Title VII, and the PHRA and is accordingly
subject to the provisions of each said act.

2

IV.   **STATEMENT OF CLAIMS:**

10.   Plaintiff Kelley, a Transgender male, commenced his employment with The Defendant in or around June of 2016 as a Barista at The Defendant's Conshohocken location. Plaintiff Kelley maintained an excellent job performance rating in said capacity at all times.

11.   By way of background, in or around June of 2012, Plaintiff Kelley was diagnosed with chronic depression, anxiety disorder, and panic disorder. Said medical conditions constitute disabilities pursuant to the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") in that it substantially impairs one or more of Plaintiff Kelley's major life activities, including, but not limited to, interacting with others, social and occupational functioning, and caring for oneself.

12.   By way of further background, on or about May 12, 2016, Plaintiff Kelley was diagnosed with Gender Identity Disorder. Thereafter, Plaintiff Kelley began his transition from female to male via the administration of hormone replacement therapy, thereafter presenting himself as male. Said medical condition constitutes a disability pursuant to the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") in that it substantially impairs one or more of Plaintiff Kelley's major life activities, including, but not limited to, interacting with others, reproducing, and social and occupational functioning.

13.   Shortly after his hire, in or around July of 2016, Plaintiff Kelley began experiencing panic attacks due to the stresses brought on by his gender transition. Thereafter, Plaintiff Kelley informed Jesse Salvato ("Salvato"), Store Manager, of his

3

disabilities (Gender Identity Disorder/ Anxiety/ Depression) and requested a reasonable medical leave of absence for his disabilities. Salvato denied Plaintiff Kelley's request for reasonable accommodation and as a result Plaintiff Kelley was constructively terminated from his position of employment.

14.     By information and belief, subsequent to Plaintiff Kelley's constructive termination, Salvato informed Benjamin Thompson ("Thompson"), Store Manager, that Plaintiff Kelley had quit because Plaintiff Kelley "wanted to be a dude," evidencing his discriminatory animus towards Plaintiff Kelley based on his sex (Transgender male) and/or disability (Gender Identity Disorder).

15.     In or around May of 2017, Plaintiff Kelley began fully identifying and presenting himself as male.

16.     Thereafter, on or about October 2, 2017, The Defendant rehired Plaintiff Kelley as a Barista at The Defendant's Spring House location.

17.     Importantly, Plaintiff Kelley was interviewed by Salvato, who had transferred to said location a few months prior.

18.     Shortly after Plaintiff Kelley was rehired in or around October of 2017, Salvato and Jeremy Smith ("Smith"), Store Manager, commenced a campaign of discrimination against Plaintiff Kelley based on his sex (Transgender male) and/or disabilities (Gender Identity Disorder/Anxiety/Depression).

19.     By way of example, in or around October of 2017, Smith approached Alyssa Melasecca ("Melasecca"), Store Manager, and informed his that Plaintiff Kelley's "name could be changed in the system." By way of background, at this time, Plaintiff

4

Kelley had unofficially changed his name and was known as "Connor Kelley" to his supervisors and fellow employees.  However, Plaintiff Kelley's legal named remained as "Anna Kelley" and was used for The Defendant's payroll system.

20.     By information and belief, Smith became aware of Plaintiff Kelley's sex (Transgender male) and disability (Gender Identity Disorder) after seeing the name on the checks issued to Plaintiff Kelley. Smith made the abovementioned statement to Melasecca in order to alarm Plaintiff Kelley and cause him great embarrassment. Further, Smith acted with the perception that Plaintiff Kelley failed to conform to preconceived stereotypes of what a "true male" should be.

21.     In or around December of 2017, Smith organized a store-wide holiday gift exchange where each employee would receive a gift from a fellow employee. In a case of obvious disparate treatment, Plaintiff Kelley was excluded from the exchange and was the only employee at the location not to receive a gift.

22.     In or around January of 2018, Plaintiff Kelley was working The Defendant's drive-thru window with Smith. After a drive-thru customer had finished their transaction, Smith leered at Plaintiff Kelley and stated over his headset that, "the person in the passenger seat looked they were transitioning from something to something," mocking Plaintiff Kelley's recent transition from female to male.

23.     Despite Smith and Salvato's blatant pattern of discrimination directed against Plaintiff Kelley, in or around April of 2018, Plaintiff Kelley was voted "Partner of the Quarter" for his excellent work ethic and his ability to embody The Defendant's core

values. As "Partner of the Quarter", recipients receive a certificate to be displayed in the store.

24.     Nevertheless, Salvato failed to provide Plaintiff Kelley with the abovementioned recognition. In contrast to other cisgender and/or nondisabled employees that were voted "Partner of the Quarter," Salvato refused to display Plaintiff Kelley's certificate.

25.     Further, Plaintiff Kelley was only notified that he was voted "Partner of the Quarter" after Sam Haber ("Haber"), Store Manager, informed Plaintiff Kelley of the same and ordered Plaintiff Kelley to keep it a "secret."

26.     During the same period, in or around April of 2018, Plaintiff Kelley overheard Smith discussing the recent departure of Collean O'Brien ("O'Brien"), Partner. Smith was aware that, like Plaintiff Kelley, O'Brien suffered from several disabilities. Shockingly, when referring to O'Brien's resignation, Smith stated "we bully anyone we don't like out of the store," insinuating that The Defendant created a hostile work environment for those with disabilities in an effort to force their resignation.

27.     In connection thereto, on or about May 21, 2018, Plaintiff Kelley reported Smith's discriminatory behavior to Salvato. In response, Salvato assured Plaintiff Kelley that he would not schedule Plaintiff Kelley and Smith to work the same shifts.

28.     Notwithstanding Salvato's assurances, The Defendant continued to schedule Plaintiff Kelley to work with Smith, causing Plaintiff Kelley severe anxiety and depression.

29.     Smith's discriminatory behavior continued into June of 2018. By way of
example, on or about June 29, 2018, Smith followed Plaintiff Kelley around The
Defendant's store, ridiculing Plaintiff Kelley by calling him "buddy" and "pal."

30.     Having reached his breaking point with Smith's behavior, Plaintiff Kelley
ordered Smith to refrain from further speaking to him and reported Smith to Jenna Ferone
("Ferone"), Store Manager, for discrimination on the same date. As Plaintiff Kelley was
informed Ferone of Smith's behavior, Smith followed Plaintiff Kelley into the back
office and demanded to know why Plaintiff Kelley did not want to speak with him.
Thereafter, Melasecca stepped into the office and ordered Smith to leave. Shortly
thereafter, Smith departed from The Defendant's store at the end of his shift.

31.     Less than thirty (30) minutes after leaving The Defendant's store, Smith
sent a text message to Plaintiff Kelley that read, "you don't have to like me but you're
going to respect me," as a threat to Plaintiff Kelley for reporting Smith's discriminatory
behavior to Ferone.

32.     In response thereto, on or about June 30, 2018, Plaintiff Kelley reported
Smith's discriminatory behavior to Caitlin Durkin ("Durkin"), Store Manager, and once
again requested that he no longer be scheduled to work with Smith. By way of
background, in or around June of 2018, The Defendant terminated Salvato's employment
for reasons unrelated to this claim and replaced him with Durkin.

33.     Thereafter, on or about July 2, 2018, Smith came into The Defendant's
store although he was not scheduled to work. In clear retaliation for reporting Smith's

behavior on or about June 29, 2018, Smith walked behind the counter where Plaintiff Kelley was working, causing Plaintiff Kelley to become increasingly uncomfortable.

34.     In response thereto, Plaintiff Kelley suffered a panic attack, despite not having one in over a year. Thereafter, Plaintiff Kelley requested that he be transferred from his shift as a reasonable accommodation. The Defendant approved the same.

35.     On or about July 3, 2018, Durkin called Plaintiff Kelley to discuss Plaintiff Kelley's grievances against Smith. During said conversation, Plaintiff Kelley disclosed to Durkin that he was a Transgender male and that he suffered from Gender Identity Disorder, Anxiety and Depression. Initially responsive to Plaintiff Kelley's requests, Durkin reassured Plaintiff Kelley that she would not schedule Smith and Plaintiff Kelley to work at the same time but that she "needed time to figure out the schedule."

36.     Notwithstanding Durkin's assurances, The Defendant continued to schedule Smith at the same times as Plaintiff Kelley.  Further, Smith began to make unscheduled appearances at The Defendant's store with the anonnet purpose to harass Plaintiff Kelley in retaliation for reporting Smith.

37.     By way of example, on or about July 25, 2018, Smith entered into The Defendant's store despite not being scheduled to work on said date. He then proceeded to follow Plaintiff Kelley behind the counter in an attempt to physically intimidate Plaintiff Kelley.

38.     During his tenure of employment with The Defendant, Plaintiff Kelley registered several complaints of sex and disability discrimination with The Defendant's

8

Store Managers. Despite Plaintiff Kelley's protestations, The Defendant failed to conduct an investigation and likewise failed to take steps to cause the discrimination to cease.

39.     As a result, on or about August 4, 2018, Plaintiff Kelley registered another complaint of sex and disability discrimination with Donna Lemon ("Lemon"), District Manager. Plaintiff Kelley attached his statement to the complaint, outlining Smith's discrimination in detail. However, The Defendant failed to investigate Plaintiff Kelley's claims and further failed to take any action to remediate Smith's discriminatory and retaliatory conduct.

40.     On or about August 19, 2018, Plaintiff Kelley was scheduled to work with Smith. During said shift, Smith again attempted to physically intimidate Plaintiff Kelley. Remarkably, on several occasions, Plaintiff Kelley had to go out of his way to avoid getting shoved by Smith as they crossed paths. Smith's behavior triggered Plaintiff Kelley's anxiety and caused him to suffer another panic attack, requiring him to request that he be permitted to leave for the remainder of his shift. The Defendant approved the same.

41.     The following day, on or about August 20, 2018, Plaintiff Kelley suffered a severe panic attack while working at The Defendant's store. Melasecca, observing that Plaintiff Kelley was physically upset and unresponsive, informed Sapp of the same and dismissed Plaintiff Kelley from the rest of his shift.

42.     A few hours after Plaintiff Kelley was dismissed, Durkin called Plaintiff Kelley at home and informed him that he should call Human Resources and request medical leave, based on his disabilities (Gender Identity Disorder/ Anxiety/ Depression).

Further, Durkin informed Plaintiff Kelley that she was not allowed to recommend that Plaintiff Kelley take medical leave but that if he did not request medical leave, he would be terminated.

43.    Moments after finishing the above conversation with Plaintiff Kelley, Durkin called Plaintiff Kelley again and instead informed him that Human Resources "recommended that you be separated from the company so that you can deal with whatever is happening in your life." Thereafter, Durkin unlawfully terminated Plaintiff Kelley's employment with The Defendant.

44.    Plaintiff Kelley believes and avers that The Defendant terminated his employment based on his sex (Transgender male) and/or actual and/or perceived disabilities and/or record of impairment (Gender Identity Disorder/ Anxiety/ Depression) and/or in retaliation for opposing discrimination in the workplace and requesting reasonable accommodation.

## COUNT I
### (Title VII - Sex Discrimination, Hostile Work Environment)
### Plaintiff Kelley v. Defendant

45.    Plaintiff Kelley incorporates by reference paragraphs 1 through 44 as though fully set forth at length herein.

46.    The Defendant subjected Plaintiff Kelley to a hostile working environment and sex discrimination based on his gender and gender nonconformity, as detailed above.

47.    Plaintiff Kelley considered the aforementioned conduct to be discriminatory, and reported said discriminatory conduct, both verbally and in writing, to numerous management level employees of Defendant.

48.    Accordingly, Defendant was fully aware of the hostile work environment. However, despite Plaintiff Kelley's numerous complaints of discrimination, Defendant failed to conduct an investigation or otherwise cause the discriminatory conduct to cease.

49.    Rather than cause the discriminatory conduct to cease, Defendant terminated Plaintiff Kelley's employment, so that he could "deal with whatever [was] happening in [his] life." However, Defendant's reason for Plaintiff Kelley's termination is pretextual, and his employment was actually terminated because of his gender and gender nonconformity.

50.    Accordingly, Defendant's discriminatory acts have deprived Plaintiff Kelley of equal employment opportunities because of his sex in violation of Title VII.

51.    As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Kelley sustained permanent and irreparable harm, resulting in the loss of his employment, which caused his to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

52.    As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Kelley suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II
### (Title VII - Retaliation)
### Plaintiff Kelley v. Defendant

53.     Plaintiff Kelley incorporates by reference paragraphs 1 through 52 as though fully set forth at length herein.

54.     The actions of Defendant, through its agents, servants, and employees, in subjecting Plaintiff Kelley to retaliation for opposing unlawful discrimination in the workplace, constituted a violation of Title VII.

55.     Defendant terminated Plaintiff Kelley's employment in retaliation for registering numerous complaints of discrimination in the workplace.

56.     The reason articulated for Plaintiff Kelley's termination is pretextual, and his employment was actually terminated in retaliation for opposing unlawful discrimination in the workplace.

57.     As a direct result of the aforesaid unlawful retaliatory practices engaged in by the Defendant in violation of Title VII, Plaintiff Kelley sustained permanent and irreparable harm, resulting in the loss of his employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

58.     As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Kelley suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### COUNT III
### (ADA – Disability Discrimination, Failure to Accommodate)
### Plaintiff Kelley v. Defendant

59.     Plaintiff Kelley incorporates by reference paragraphs 1 through 58 of his Complaint as though fully set forth herein.

60.     The actions of the Defendant, through its agents, servants and employees, in discriminating against Plaintiff Kelley on the basis of his actual and/or perceived disabilities and/or record of impairment, and failing to provide reasonable accommodation for his disability, constituted violations of the ADA.

61.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Kelley sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

62.     As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Kelley suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### COUNT IV
### (ADA - Retaliation)
### Plaintiff Kelley v. the Defendant

63.     Plaintiff incorporates by reference paragraphs 1 through 62 of his Complaint as though fully set forth herein.

64. The actions of the Defendant, through its agents, servants and employees, in retaliating against Plaintiff Kelley for requesting a reasonable accommodation, and for opposing unlawful disability discrimination in the workplace, constituted a violation of the ADA.

65. As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Kelley sustained permanent and irreparable harm resulting in the termination of his employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

66. As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Kelley suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT V
### (PHRA – Sex Discrimination, Hostile Work Environment, Disability Discrimination, Failure to Accommodate)
### Plaintiff Kelley v. Defendant

67. Plaintiff Kelley incorporates by reference paragraphs 1 through 66 of his Complaint as though fully set forth herein.

68. The actions of the Defendant, through its agents, servants and employees, in discriminating against Plaintiff Kelley on the basis of his sex, his actual and/or perceived disabilities and/or record of impairment, for subjecting him to a hostile work environment, and failing to provide reasonable accommodation for his disability, constituted violations of the PHRA.

69.    As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Kelley sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

70.    As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Kelley suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

<div align="center">

**COUNT VI**
**(PHRA - Retaliation)**
**<u>Plaintiff Kelley v. the Defendant</u>**

</div>

71.    Plaintiff incorporates by reference paragraphs 1 through 70 of his Complaint as though fully set forth herein.

72.    The actions of the Defendant, through its agents, servants and employees, in retaliating against Plaintiff Kelley for requesting a reasonable accommodation, and for opposing unlawful discrimination in the workplace, constituted a violation of the PHRA.

73.    As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Kelley sustained permanent and irreparable harm resulting in the termination of his employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

74.     As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Kelley suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## PRAYER FOR RELIEF

75.     Plaintiff Kelley incorporates by reference paragraphs 1 through 74 of his Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff Kelley requests that this Court enter judgment in his favor and against the Defendant, and order that:

a.      Defendant compensate Plaintiff Kelley with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination.

b.      Defendant compensate Plaintiff Kelley with an award of front pay, if appropriate;

c.      Defendant pay to Plaintiff Kelley punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

d.      Defendant pay to Plaintiff Kelley, pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

e.      The Court award such other relief as is deemed just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury.

<div style="margin-left:40%">

SIDNEY L. GOLD & ASSOC., P.C.

By: _____

/s/ Sidney L. Gold, Esquire SG1387
SIDNEY L. GOLD, ESQUIRE
I.D. No.:  21374
1835 Market Street, Suite 515
Philadelphia, PA 19103
**Attorney for Plaintiff**

</div>

DATE:   February 13, 2020

## VERIFICATION

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: 2/11/20

CONNOR KELLEY, PLAINTIFF

JS 44 (Rev. 06/17)                           **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| CONNOR KELLEY | STARBUCKS CORPORATION D/B/A STARBUCKS COFFEE COMPANY |
| **(b)** County of Residence of First Listed Plaintiff   MONTGOMERY *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   MONTGOMERY *(IN U.S. PLAINTIFF CASES ONLY)* NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* Sidney L. Gold, Esquire Sidney L. Gold & Assoc., P.C. 1835 Market St., Suite 515 Phila., PA 19103 215-569-1999 | Attorneys *(If Known)* |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                                     Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | PROPERTY RIGHTS | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | PERSONAL PROPERTY | | SOCIAL SECURITY | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | LABOR | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 720 Labor/Management | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Relations | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | Leave Act | FEDERAL TAX SUITS | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | Income Security Act | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | IMMIGRATION | | State Statutes |
| | Employment | Other: | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: TITLE VII, ADA, PHRA

Brief description of cause:

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ 150,000.00 *in excess* | CHECK YES only if demanded in complaint: JURY DEMAND:   ☒ Yes   ☐ No |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | *(See instructions):* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

DATE                                      SIGNATURE OF ATTORNEY OF RECORD
02/13/2020                                /S/ SIDNEY L. GOLD, ESQUIRE

FEB 13 2020

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

20        842

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __1071 Tyson Avenue, Abington, PA 19001__

Address of Defendant: __1103 Bethlehem Pike, Spring House, PA 19477__

Place of Accident, Incident or Transaction: __1103 Bethlehem Pike, Spring House, PA 19477__

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes [ ]   No [✓]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes [ ]   No [✓]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes [ ]   No [✓]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes [ ]   No [✓]

I certify that, to my knowledge, the within case [ ] is / [✓] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __02/13/2020__    __/s/ Sidney L. Gold, Esq.__    __21374__
                         *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   Federal Question Cases:**

- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Patent
- [ ] 6. Labor-Management Relations
- [✓] 7. Civil Rights
- [ ] 8. Habeas Corpus
- [ ] 9. Securities Act(s) Cases
- [ ] 10. Social Security Review Cases
- [ ] 11. All other Federal Question Cases
       *(Please specify):* _____

**B.   Diversity Jurisdiction Cases:**

- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury *(Please specify):* _____
- [ ] 7. Products Liability
- [ ] 8. Products Liability – Asbestos
- [ ] 9. All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __SIDNEY L. GOLD, ESQUIRE__, counsel of record *or pro se plaintiff*, do hereby certify:

- [✓] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
- [✓] Relief other than monetary damages is sought.

FEB 13 2020

DATE: __02/13/2020__    __/s/ Sidney L. Gold, Esq.__    __21374__
                         *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| CONNOR KELLEY | : | CIVIL ACTION |
| v. | : | |
| STARBUCKS CORPORATION D/B/A | : | NO. 20      842 |
| STARBUCKS COFFEE COMPANY | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.               (✓)

| | | |
|---|---|---|
| 02/13/2020 | /s/ Sidney L. Gold, Esq. | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

FEB 13 2020